# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| ORAL F. SEKENDUR | ) | No. 05 B 00739 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO RECONSIDER, ALTER OR AMEND JUDGMENT ENTERED MARCH 23, 2005 (DOCKET NO. 33) DISMISSING DEBTOR'S BANKRUPTCY CASE AND ON CREDITORS CIVIL CONTEMPT MOTIONS

This matter relates to the Chapter 7 bankruptcy case of Oral F. Sekendur ("Sekendur" or "Debtor"), filed January 11, 2001. He is a serial bankruptcy filer; this was his third case. After conversion to Chapter 7, Findings of Fact and Conclusions of Law and a Dismissal Order were entered dismissing Sekendur's case pursuant to 11 U.S.C. § 707(a) for cause, under § 707(a)(1) for unreasonable delay prejudicial to creditors, and under § 707(a)(2) for non-payment of filing fees. (In re Sekendur, 05 B 00739, March 23, 2005.) He was forbidden to refile unless first moving on notice to all creditors in this case for leave to do so, and provided that he tender filing fees due in this case; tender filing fee to become due in the new case; tender complete, coherent, and accurate schedules; and demonstrate favorable change of circumstances in any new Chapter 13 case. The Debtor has moved to alter or amend the Dismissal Order pursuant to Fed.R.Bankr.P. 9023(c). Ruling thereon was delayed while the court considered certain motions from creditors for sanctions. For reasons stated herein, the Debtor's motion to vacate the dismissal is denied, but the Dismissal Order is altered so as to impose the additional condition of paying the civil contempt sanctions imposed on Debtor this date by separate order.

## AMENDED FINDINGS OF FACT

1.     On January 11, 2005 Oral F. Sekendur filed a voluntary Chapter 13 petition.

2.     The Debtor's schedules indicate that he is currently unemployed but he owns

dental equipment and in 2001 leased dental space, provided referral management, financing,

collection and laboratory services to dentists in Illinois.

3.     The Debtor's schedules indicate further that his assets include patents of an

unknown value.

4.     The Debtor elected to proceed pro se in this bankruptcy case.  The Debtor has

represented himself in prior bankruptcy cases and in litigation before the Bankruptcy and District

Courts of the Northern District of Illinois and the Seventh Circuit.  Debtor is currently a party in

several cases pending before various Judges in this District.[1]

5.     Prior to filing this case, Debtor filed two Chapter 13 petitions in 2004, assigned

respectively to Bankruptcy Judges Schwartz and Cox. The bankruptcy filings appear to be part of

a strategy to (1) escape adverse judgments and orders entered in connection with pending

litigation in the District Court and (2) protect his alleged patent assets.

## Bankruptcy Case 04 B 02173

6.     The Debtor is currently involved in litigation with Dent-A-Med, Inc. ("Dent-A-

Med") relating to breach of contract and assorted alleged harms. (Sekendur v. Dent-A-Med,

00 CV 7054, pending before Judge Leinenweber).

---

[1]  Sekendur v. Dent-A-Med, 03 CV 3854, Sekendur v. Anoto AB, 04 CV 4156, Sekendur
v. Shiken Corp., 00 CV 7055, Sekendur v. Federal BankCentre, 04 CV 3854, Sekendur v. American
Arbitration Assoc., 04 CV 3852, U.S.A. v. Sekendur, 03 CV 807.

7.     On January 15, 2004 Judge Leinenweber ordered a bench warrant to issue against the Debtor for failing to comply with a judgment order. That order required the Debtor to pay a specified amount or, in the alternative, to assign his patent assets to Dent-A-Med.

8.     Five days later, on January 20, 2004, Debtor filed a voluntary Chapter 13 petition. (In re Sekendur, 04 B 02173.)

9.     On February 19, 2004 Judge Schwartz dismissed Debtor's Chapter 13 case specifically finding that Debtor's proposed plan did not list household income or assets although Debtor had contended in a brief filed in the Seventh Circuit that his patents were worth millions. Judge Schwartz held that Debtor's plan was filed in bad faith and dismissed the petition pursuant to 11 U.S.C. § 1307(c)(1) for unreasonable prejudicial delay to creditors. (Dent-A-Med's Mot. Ex. A.)

10.     The Debtor appealed the dismissal of his petition, but that appeal was denied as untimely and dismissed for lack of jurisdiction. (Dent-A-Med's Mot. Ex. C.)

**Bankruptcy Case 04 B 18843**

11.     On May 13, 2004, Debtor filed a second voluntary Chapter 13 petition. (In re Sekendur, 04 B 18843.)

12.     One of the Debtor's creditors, Anoto AB ("Anoto"), filed a motion to dismiss that bankruptcy case. Anoto is suing the Debtor for, inter alia, damages for tortious interference and Lanham Act violations, and is also seeking a declaratory judgment invalidating the Debtor's patents. (See Anoto AB v. Sekendur, No. 03 C 4723 pending before Judge Holderman.)

13.     In its motion in that case, Anoto alleged that the week before the Debtor's bankruptcy filing, a decision and order favorable to Anoto was entered in a non-bankruptcy case.

- 3 -

According to Anoto, the Debtor's filing was an attempt to derail dismissal of his claims in that litigation.

14.     On June 22, 2004 Bankruptcy Judge Cox held a hearing on Anoto's Motion to Dismiss and concluded that the Debtor filed his Chapter 13 petition in bad faith. Judge Cox found that the Debtor's petition reported no income, failed to disclose his wife's assets, failed to disclose his alleged patent assets, and did not show any change in circumstances from the filing of his first petition. Judge Cox dismissed Debtor's petition pursuant to 11 U.S.C. § 1307(c)(1) for unreasonable prejudicial delay to creditors, and pursuant to 11 U.S.C. § 109(g), the order barred Debtor from filing a bankruptcy petition with any court for 180 days. (Dent-A-Med's Mot. Ex. B.)

15.     The Debtor appealed the dismissal of that bankruptcy case. However, District Court Judge Moran dismissed that appeal concluding that the Debtor deliberately omitted assets in his in forma pauperis petition such as his ownership of $50,000 worth of dental equipment and his patent assets. Judge Moran stated "[the Debtor] did not merely miscalculate the value of his household assets, nor fudge the numbers and forget to disclose some property; his categorical denial of having any income or assets is untrue." (Dent-A-Med's Mot. Ex. D, Mem. Opinion at 4.)

16.     The Debtor appealed Judge Moran's dismissal of his in forma pauperis petition to the Seventh Circuit. A Seventh Circuit panel denied that appeal in an unpublished order. (In re Sekendur, No. 04-4156. 7th Cir. 2005.)

**Instant Bankruptcy Petition**

17.     On September 2, 2004 Judge Leinenweber entered an Order in the Dent-A-Med litigation sanctioning the Debtor pursuant to 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying proceedings.  On December 4, 2004, Judge Leinenweber entered an Order requiring the Debtor to pay $20,005.25 in attorneys' fees and costs to Dent-A-Med. (Dent-A-Med's Mot. Ex. F.)

18.     On December 21, 2004 Judge Leinenweber again directed Sekendur to pay Dent-A-Med's attorneys fees or, in the alternative, assign certain of his patent assets.  Judge Leinenweber set a hearing on January 11, 2005 threatening further sanctions if the Debtor failed to comply by that date.

19.     The Debtor did not comply with the Order. On January 11, 2005 minutes before Judge Leinenweber's hearing, the Debtor filed the instant bankruptcy case, his third case.

**Debtor's Petition and Schedules**

20.     The Debtor's schedules stated that he owns an account comprising a pension or retirement plan in amount of $155,000, interests in negotiable instruments, accounts receivables, office equipment and machinery, fixtures used in business as well as his certain patents. He estimated that the total value of these assets is over $152,000,000. (Sch. B, Personal Property.)

21.     The Debtor listed his wife, Ms. Cathie Sekendur, as a creditor holding a $350,500 security interest in his patents.  According to the Debtor, he granted Ms. Sekendur a security interest on February 20, 2004.

22.    The Debtor listed his combined monthly income as either $6000 or $10,000. He projects his monthly expenses as $17,000.

23.    Debtor submitted an application to pay the filing fee for his bankruptcy petition in installments.

24.    On January 11, 2005 an Installment Payment Order was entered approving Debtor's filing fee application and requiring monthly payments. The first installment payment was due by February 10, 2005. (Filing Fee Application, January 11, 2005.) Debtor did not tender payment by that date. Nor has the Debtor ever made any payment on the filing fee.

25.    On February 14, 2005 Debtor filed a motion alleging violation of the stay by Strongbox Self Storage. A hearing was held on that motion wherein Debtor admitted that he had no present income and there was no change in circumstances following dismissal of his earlier Chapter 13 cases.

26.    The Debtor was warned that based on apparent lack of changed circumstances his Chapter 13 case might be dismissed for having been filed in bad faith. Thereupon, Debtor filed a motion to convert his Chapter 13 case to Chapter 7 case and his case was thereafter considered under the latter Chapter.

27.    Dent-A-Med had earlier filed a Motion to Dismiss the original Chapter 13 case. Debtor was ordered to file an Answer but did not do so. Therefore, all well pleaded allegations in the Motion were deemed admitted. After the case was converted to Chapter 7, Dent-A-Med filed a supplemental Motion to dismiss for cause pursuant to 11 U.S.C. § 707(a), which adopted allegations in the earlier Motion to dismiss.

28.    On February 25, 2005, the Court moved sua sponte to consider dismissal for failure of Debtor to pay his filing fees, and also took up Dent-A-Med's then pending Motion to Dismiss. An Order was entered setting both Motions for hearing March 18, 2005 and noticing the Debtor, Dent-A-Med, Strongbox Storage and the Chapter 7 Trustee.

29.    On March 18, 2005, the Debtor did not appear, but the other parties (Dent-A-Med, Inc., Chapter 7 Trustee, and Strongbox) did appear by counsel.

30.    On March 23, 2005 pursuant to Findings of Facts and Conclusions of Law an Order and Injunction were entered dismissing the Debtor's bankruptcy case under 11 U.S.C. § 707(a) for cause; under § 707(a)(1) for unreasonable delay prejudicial to creditors; and under § 707(a)(2) for non-payment of fees ("Dismissal Order").

31.    The dismissal was with prejudice under 11 U.S.C. § 349 and Debtor was permanently enjoined from filing or refiling any new bankruptcy case or proceeding in any court subject to the following conditions:

(a)    The Debtor must seek advance leave to file a new bankruptcy case on motion and notice to all creditors scheduled in this case, and the Debtor must show with his motion:

> Good cause including preparation of complete, coherent, and consistent schedules and all other required papers; and a change of circumstances demonstrating ability and intent to perform duties under the Bankruptcy Code.
>
> The Debtor must tender payment of filing fee due but unpaid in this case, and also tender in advance full payment of filing fee due in any new case sought to be filed.

The Dismissal Order reserved jurisdiction to consider future motions demonstrating compliance with its conditions.

32.    Instead of complying with the Dismissal Order, the Debtor filed the instant Motion to Vacate the dismissal. Debtor also asserted that he was unable to pay the filing fee and separately moved on March 23, 2005 for extension of time to do so. As proof of his inability to pay, Debtor cited a No Asset Report prepared by the Chapter 7 Trustee.[2] For various reasons, including the Debtor's ability to spend money out of his $155,000 retirement account if he chooses to do so, that motion was denied on March 25, 2005. Debtor's separate motion to vacate the dismissal order and injunction stated that he was late for the previous hearing in which the Dismissal Order was entered and requested a new hearing on his bankruptcy case and a new hearing for all other matters. (See Debtor's Mot. to Vacate Order, March 23, 2005.) Since Debtor made several citations of authority in this motion it was taken under advisement. Later, two creditors claimed to have had litigation expense forced on them by Debtor's motions of the dismissal order, and they sought civil sanctions. It was decided to hold the opinion on the instant motion until all could be decided at the same time and that has been done. The civil sanctions motions are separately ruled on today.

33.    The Debtor also separately submitted in open court an in forma pauperis application in this bankruptcy case seeking to be excused from paying filing fees.[3] The Debtor failed therein to disclose assets, including his $155,000 retirement plan (which he has right to draw upon even though the same may be exempt from creditors' claims under Illinois law), and his wife's assets available to him. As a result, the application was denied.

---

[2] The No Asset Report was subsequently withdrawn by the Trustee. (See Order, March 25, 2005.)

[3] The in forma pauperis application cannot be located on the docket and may not have been filed.

- 8 -

34.     After Debtor filed the instant pending Motion to Amend or Alter the Dismissal

Order, it was announced from the bench that an opinion detailing reasons for denial would be

issued at a future date. This is that opinion.

35.     On June 16, 2005 Debtor filed a motion entitled Motion For Leave to File a New

Chapter 7 Bankruptcy. In that Motion, the Debtor stated that his circumstances had changed

because Judge Leinenweber entered the order requiring him to pay Dent-A-Med $20,005.25 or in

the alternative to turn over his patents to Dent-A-Med.

36.     The Debtor failed to give notice to all creditors and tender the necessary filing

fees due in this case and fees to become due if he filed a new case. As a result, that Motion was

denied by Order entered on June 27, 2005.

37.     On July 6, 2005, the Debtor moved to amend or alter the latter Order. Debtor

continued to argue that he did not have funds to pay the filing fees or costs necessary to send

notice to all his creditors. Debtor also declared that he did not have access to any non-exempt

assets to pay the filing fees. (Debtor's Mot. ¶ 3.) Debtor did not allege any new facts or law or

present any new evidence. As a result, the Motion was denied. (See Order, July 11, 2005.)

**Motions for Civil Contempt**

38.     On July 7, 2005 Dent-A-Med moved by motion for sanctions and to show cause

why the Debtor should not be held in civil contempt for violating the Dismissal Order ("Motion

for Sanctions"). On July 11, 2005, an order was entered treating Dent-A-Med's Motion for

Sanctions as a Motion for Civil Contempt under Fed.R.Bankr.P. 9020 and Local Rule 9020-1

("Civil Contempt Order"). Anoto filed a pleading joining in and adopting the Motion for

Sanctions. Dent-A-Med argued in the Motion for Sanctions that the Debtor knowingly failed to

- 9 -

comply with the Dismissal Order when he filed the First and Second Motions. Dent-A-Med further asserted that the Debtor's multiple motions to amend or alter previously entered orders were frivolous and baseless.

39.    The Debtor, as required by the Civil Contempt Order, filed an Answer purporting to explain his conduct. But Debtor still failed to serve all creditor parties in interest copies of his Answer.

40.    The Civil Contempt Order set a hearing to consider whether the two motions filed by the Debtor complied with the orders of this Court. A hearing was held on the Motion for Sanctions on August 18, 2005.

41.    It was announced from the bench at that hearing that the Motion for Civil Contempt Sanctions would be granted. It was also announced that Applications for attorney fees were to be considered that were occasioned by the Debtor's civil contempt and the requiring of creditors' counsel to come in to oppose Debtor's efforts to file a new case in violation of the Dismissal Order. Counsel was therefore permitted to file and serve affidavits requesting attorney fees. A separate hearing was set to determine appropriate remedies and to take testimony.

42.    The following fees were requested as civil contempt sanctions in connection with Debtor's First and Second Motions:

> (1)    Richard G. Ziegler, representative of Anoto AB,
> requests $3,623.75 in fees
> (2)    Gerson S. Panitch, representative of Anoto AB,
> requests $1,133.00 in fees
> (3)    Richard J. Arendt, representative of Dent-A-Med,
> requests $4,916.25 in fees

Those counsel showed by evidence that they performed reasonable and necessary services in representation of their respective clients opposing the two motions of Debtor referred to, and thereby their clients incurred expenses resulting from Debtor's motions.

43.     After consideration of the evidence presented by the Debtor, Dent-A-Med, and Anoto, the Debtor is separately being held in civil contempt and required to pay damages by a separate Order to be entered herein. As a result of the foregoing, an Order will alter and amend the Dismissal Order by adding to it a requirement that Debtor pay civil contempt damages that are awarded as an additional pre-condition to filing any new bankruptcy case.

44.     Facts stated in the Conclusions of Law will stand as further Findings of Fact.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This hearing is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Reference of all bankruptcy matters and issues herein was made to the bankruptcy court under District Court Internal Operating Procedure 15(a). Venue lies in this District under 28 U.S.C. § 1409(a). United States Bankruptcy Judges have authority as well as core jurisdiction under the Bankruptcy Code and the United States Constitution to enter orders finding and punishing civil contempt. Cox v. Zale Delaware, 239 F.3d 910, 916-917 (7th Cir. 2001); In re Skinner, 917 F.2d 444, 447-450 (10th Cir. 1990); In re Walters, 868 F.2d 665, 669 (4th Cir. 1989); In re Alpern, 191 B.R. 107, 110-111 (N.D. Ill. 1995); In re Schatz, 122 B.R. 327, 328-329 (N.D. Ill. 1990).

## CONCLUSIONS OF LAW

### Standards for Motions for Reconsideration

Fed. R. Civ. P. 59(e), applicable herein by Fed.R.Bankr.P. 9023, applies to motions to alter or amend judgment. Under those rules, a party seeking to alter or vacate a judgment has 10 days from entry of the judgment to file a motion for such relief. Such motions "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986); Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995).

The Rules do not give a party the opportunity to undo its own procedural failures or present new evidence or arguments "that could and should have been presented to the district court prior to judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996) (citing LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir. 1995)).

### Debtor's Motion is Untimely

A motion to alter or amend judgment must be filed within 10 days of the entry of judgment. Fed.R.Bankr.P. 9023. Failure to file within this time period is fatal and precludes relief.

The Dismissal Order was entered March 23, 2005. Fed.R.Bankr.P. 9006(a) provides that when computing any period of time prescribed by any applicable statute, (1) the time period begins to run on the day after the act has occurred and (2) if the last day falls on a Saturday, the period runs to the end of the next day that is not a Sunday or legal holiday. Fed.R.Bankr.P. 9006; Collier on Bankruptcy, 10-9006 (15th ed. rev. 2004). The Debtor should have filed this Motion on April 4, 2005. The Debtor, however, did not file it until April 5, 2005, one day past the

- 12 -

deadline. There is no discretion to permit an extension of this Rule, even for filings one day late.

Id. ("the court may not enlarge the time for taking actions under Rules ... 9023."). The Debtor's

Motion could be denied as untimely, but it is more appropriate for reasons set forth below to alter

the Dismissal Order so as to stiffen its terms.

## "For Cause" Dismissal

In addition, Debtor's bankruptcy case was properly dismissed for cause pursuant to

Section 707(a). That section provides in pertinent part:

> (a)    The court may dismiss a case under this chapter only after notice
> and a hearing and only for cause, including--
>
>> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>> (2) nonpayment of any fees and charges required under chapter 123
>> of title 28; and
>> (3) failure of the debtor in a voluntary case to file, within fifteen
>> days or such additional time as the court may allow after the filing
>> of the petition commencing such case, the information required by
>> paragraph (1) of section 521, but only on a motion by the United
>> States trustee.

11 U.S.C. § 707(a). Debtor's case was dismissed both on court's motion sua sponte and upon

motion of Dent-A-Med under Section 707(a). Debtor argues that a Section 707(a) dismissal

cannot result at the request of any party in interest and therefore all allegations contained in Dent-

A-Med's motion are irrelevant. (Debtor's Br. at 3.) The Debtor confuses Section 707(a) with

Section 707(b). Debtor's argument refers to a statutory requirement under Section 707(b).

Sekendur's case cannot be and was not considered under Section 707(b) because dismissals

under that section is available only in cases involving an individual with "primarily consumer

debts." Consumer debt is defined in Section 101 to mean a "debt incurred by an individual

primarily for a personal, family, or household purpose." 11 U.S.C. § 101.

This is to be contrasted with "debt incurred for a business venture or with a profit motive," which is not consumer debt. In re Runski, 102 F.3d 744, 747 (4th Cir. 1996); In re Booth, 858 F.2d 1051, 1055 (5th Cir.1988) ("The test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit"). Furthermore, the word "primarily" has generally been construed as meaning at the very least a majority. See In re Pedigo, 296 B.R. 485, 490 (Bankr. S.D. Ind. 2003) (collecting cases). The majority of Debtor's debts arose from litigation pertaining to his patents and are of a business rather than personal nature. Under Section 707(a) a case may be dismissed upon motion of a creditor. Debtor's argument is therefore rejected.

Section 707(a) of the Bankruptcy Code provides three examples of "cause" that justify dismissal of a Chapter 7 case: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of certain fees; and (3) failure to file specified information. The three examples of a "for cause" dismissal set forth in Section 707(a) are not exclusive. Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1191 (9th Cir. 2000).

Debtor's bankruptcy case was dismissed with a specific finding that it was filed in bad faith. The Seventh Circuit has not yet considered what constitutes "for cause" dismissal under Section 707(a) or whether bad faith satisfies the cause requirement. Novak v. Wagnitz, No. 03 C 5106, 2004 U.S. Dist. LEXIS 5010, at *19 (N.D. Ill. March 30, 2005). Courts utilize different tests to determine whether a debtor's conduct justifies a "for cause" dismissal. The Sixth and Third Circuits and bankruptcy courts in this District use a bad faith inquiry. See Industrial Insurance Services, Inc. v. Zick (In re Zick), 931 F.2d 1124 (6th Cir. 1991) (holding that "bad

faith" in filing the chapter 7 petition per se constitutes "cause" for dismissal under Section 707(a).); Tamecki v. Frank (In re Tamecki), 229 F.3d 205 (3d Cir. 2000) (adopting same); In re American Telecom Corp., 304 B.R. 867 (Bankr. N.D. Ill. 2004). The Eight and Ninth Circuit prefer to use the statutory standard of "for cause." Padilla, 222 F.3d at 1192; Kluge v. Huckfeldt, 39 F.3d 829, 832 (8th Cir. 1994). The latter standard is more restrictive and looks only at technical and procedural violations of Section 707(a). See Padilla, 222 F.3d at 1193.

## Debtor's Case was filed in Bad Faith

The Debtor's case was dismissed in part because his schedules and statement of financial affairs were inconsistent and incoherent and contained false statements. Debtor devotes a substantial portion of his brief defending the veracity of his statement of financial affairs and his schedules. (Debtor's Br. at 5-7.) But even assuming arguendo that Debtor's schedules and statement of financial affairs had been accurate and truthful, other circumstances demonstrate bad faith and compel dismissal.

The bad faith inquiry looks at the totality of circumstances, In re Collins, 250 B.R. 645, 653-654 (Bankr. N.D. Ill. 2000), focusing on a debtor's pre and post petition conduct, In re Horan, 304 B.R. 42 (Bankr. D. Con. 2004). The facts required to mandate dismissal are as varied as the number of cases. Id. (quoting In re Bingham, 68 B.R. 933, 935 (Bankr. M.D. Pa. 1987). Some of those factors include whether the debtor has manipulated the bankruptcy process to frustrate creditors; whether the debtor is willing to make lifestyle changes to pay his debts; or whether debtor concealed or misrepresented assets and/or sources of income. In re Zick, 931 F.2d at 1129; Collins, at 654-55.

The Debtor has blatantly manipulated the bankruptcy process in an effort to frustrate his creditors. He is a serial filer who has sought bankruptcy protection only after the entry of adverse judgments against him in litigation involving his patents. In this and in previous cases, the Debtor filed Chapter 13 plans that were facially in violation of the Bankruptcy Code, even taking into account Debtor's pro se status.

The Debtor's first Chapter 13 case was filed only after issuance of a bench warrant in a non-bankruptcy District Court case, and he proposed to pay creditors in installment payments even though the Debtor did not have a monthly income. Debtor also failed to disclose his alleged patent assets.

Debtor's second Chapter 13 petition was also filed after an unfavorable ruling in his patent litigation. Debtor's plan reported no income, failed to disclose his wife's assets, failed to disclose his patent assets, and did not show any change in circumstances from the filing of his first petition.

This latest bankruptcy case was filed minutes before a District Court hearing to prevent a hearing and avoid any possible unfavorable ruling. Debtor's original Chapter 13 plan was substantially similar to the previously filed plans. Once Debtor was advised that his plan would be dismissed he immediately requested conversion to Chapter 7. After dismissal of this bankruptcy case, Debtor refused to comply with terms of the Dismissal Order, instead filing a series of baseless motions to amend or alter previous entered orders. Those motions did not present or allege any new evidence or facts. The Debtor will be imposed sanctions by separate order for those frivolous motions and payment of sanctions will by amended dismissal order be made an additional condition to filing a new bankruptcy case.

- 16 -

Furthermore, rather than pay the filing fee, Debtor tendered an in forma pauperis application. Debtor failed to disclose all assets as required by that application (which cannot be found on the docket and may not have been filed). But he did disclose a $155,000 retirement fund on which he could draw even though it is exempt from creditors. (Some "pauper!") Based on these circumstances, it must be concluded that the Debtor's motives in filing the instant bankruptcy case was to impede the Dent-A-Med litigation and forestall payments to that and other creditors.

Moreover, Debtor is unwilling to make a lifestyle change to pay his debts. Debtor has stated in open court that his wife supports him. Debtor admits that he could find employment as a dental technician. He is unwilling to do so and apparently has not done so. Debtor holds an exempt account valued at $155,000 which could defray a significant portion of his expenses. At the very least that asset could satisfy payment of the filing fee (see discussion below). He refuses to do this because the fund may be exempt from creditors claims. But that explanation only means that he chooses not to pay his filing fees in bankruptcy not that he is unable to do so.

It must be concluded based on the foregoing that Debtor's case was filed in bad faith.

### Debtor Has Not Presented Evidence Demonstrating that he Cannot Pay the Filing Fees

Those Courts following the statutory standard of "for cause" dismissals look at technical and procedural violations of Section 707(a). Padilla, 222 F.3d at 1192; see also In re Pedigo, 296 B.R. 485. Failure to pay the Chapter 7 filing fee is an express violation of the statute requiring dismissal. 11 U.S.C. § 707(a); Fed.R.Bankr.P. 1017(b). Debtor admits that he has not paid the filing fee but contends that he is destitute.

As proof of his financial difficulties, Debtor points to a checking account statement for December 24, 2004 with a negative balance of $9.23 and a credit card statement dated February 5, 2005 with a balance of $255.00. The minimum payment due on the credit card statement is $10.00. (Debtor's Mot. Exs. 6,7.)

Two expense statements do not provide a complete picture of the Debtor's finances. The Debtor's schedules and statement of financial affairs reveal that the Debtor is far from destitute. Those schedules reveal substantial assets such as dental equipment valued by him at $70,000 and a $155,000 retirement account. Debtor has not demonstrated his inability to pay.

Debtor responds in part that clerical error by the Clerk prevented him from paying the filing fee, but he did not provide evidence to support this claim. Debtor also asserts that Dent-A-Med's attachment of his bank account prevented him from paying the filing fee. The only evidence of this alleged attachment is a letter typed by the Debtor on January 12, 2004 referring to a conversation he had with a representative of a bank. The letter does not provide the name of the bank, the account number, or the amount in the account. The letter is addressed to counsel for Dent-A-Med. Debtor has not provided any proof of service of any attachment process.

Most significant, Debtor is unwilling to dip into his exempt but available $155,000 retirement fund to pay filing fees. That means he is unwilling to pay those fees, not unable. In this court most debtors have no retirement assets and have trouble paying the rent and buying food for their families, but nonetheless pay bankruptcy filing fees in installments. Debtor seeks an extraordinary exemption from fee payment even though such would not be in any way a personal sacrifice for him.

- 18 -

Fed. R. Bankr. P. 1006(b)(2) permits extension the time to pay the filing fee for cause. Cause for such extension has not been shown. Sekendur's continued and unjustified failure to pay his filing fees still due in this case and to become due in any new case fully warrants the Order entered dismissing his bankruptcy case in part for failure to pay fees, and conditioning refiling in part on tender of all fees due in this case and required in any new case.

## Standards for Civil Contempt

Fed.R.Bankr.P. 9020 specifically provides for contempt proceedings. Local Bankruptcy Rule N.D. Ill. R. Br. 9020-1 provides the appropriate procedure for commencing civil contempt proceedings.

"In order to prevail on a contempt petition, the complaining party must demonstrate . . . that the respondent has violated the express and unequivocal command of a *court order*." D. Patrick, Inc. v. Ford Motor Company, 8 F.3d 455, 466, 1993 WL 418409 (7th Cir. 1993) (emphasis original) (citing Stotler and Co. v. Able, 870 F.2d 1158, 1163 (7th Cir. 1989)). Without a court order specifying what must be done there can be no civil contempt. In re Rimsat, Ltd., 208 B.R. 910, 913 (Bankr. N.D. Ind. 1997). The burden is on the petitioner to prove the violation by clear and convincing evidence. In re Ryan, 100 B.R. 411, 417 (N.D. Ill. 1989).

Violation of the court order does not have to be "willful" to find a party in contempt. Stotler, 870 at 1163 (citing United States v. Huebner, 752 F.2d 1235, 1241 (7th Cir.1985), *cert. denied*, 474 U.S. 817 (1985)). Rather, it must be found that the offending party knowingly violated a specific court order. In re Johnson, 148 B.R. 532, 538 (N.D. Ill. 1992). A party may be found in contempt if he has not been "reasonably diligent and energetic in attempting to

accomplish what was ordered." Stotler, 870 at 1163 (citing American Fletcher Mortgage Co. v.

Bass, 688 F.2d 513, 517 (7th Cir. 1982)).

    The purpose of civil contempt proceedings "is to secure compliance with a prior court

order." Rockwell Graphics Sys. v. DEV Indus., 91 F.3d 914, 920 (7th Cir. 1996). "Courts have

inherent and statutory powers to punish a party that fails to comply with the terms of their orders,

and to coerce compliance with such orders." Baldwin Piano, Inc. v. Deutsche Wurlitzer, GmbH,

2004 WL 1323940 , *1 (N.D. Ill. 2004). The power of a court to find one in civil contempt rests

in its inherent limited authority to ensure judicial proceedings are conducted in an orderly

manner. Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir. 1999).

## Debtor's Violation of the Dismissal Order

    Based on Debtor's history of serial bankruptcy filing and relating misconduct, the

Dismissal Order unambiguously stated that Debtor was permanently enjoined:

> [F]rom filing or refiling any new bankruptcy case or proceeding in any
> court unless he first seeks advance leave of this Court to do so on motion and
> notice to all creditors scheduled in this case . . . and he tenders payment of filing
> fee due but unpaid in this case, and also (d) tenders in advance full payment of
> filing fee due in any new case sought to be filed.

He also was required to tender schedules that were complete, coherent, and consistent.

    Debtor testified that he was aware of this order but his interpretation and understanding

was different from the plain words of the Order. (Trial Tr., 23, Aug. 18, 2005). However, the

language in the Dismissal Order was unambiguous: Debtor had been forbidden from filing new

bankruptcy proceedings without noticing scheduled creditors, paying the appropriate fees, and

filing complete schedules. Nonetheless, when Debtor filed his First Motion on June 16, 2005 he

did not notice all creditors or tender the necessary filing fees in this case and the proposed new

case, nor did he tender fully complete schedules. Therefore, the Debtor violated a clear court

order when he filed the First Motion.

When Debtor presented the First Motion on June 23, 2005 he was informed by this Court

that his motion would be denied because of his failure. See June 27, 2005 Order denying his

First Motion. That Order stated, "IT IS FURTHER ORDERED that for failure to notice all

creditors and tender filing fees due and to be due, Debtor has not complied with injunction

against refiling and therefore motion of Debtor for leave to file new Chapter 7 bankruptcy is

denied." (June 27, 2005 Order). Debtor was thereby explicitly told a second time that he would

not be able to file further proceedings without complying with the Dismissal Order.

Debtor nonetheless filed a Second Motion on July 6, 2005 in which he requested the same

relief previously sought. In the Second Motion, Debtor again moved to alter or amend previous

orders of this Court without presenting any new facts or new evidence. When Debtor presented

his Second Motion before this Court on July 11, 2005, he did not notice all interested parties or

pay the past due filing fees or the new filing fees to become due in the proposed new case. It was

also questionable whether his proposed schedules were complete. Therefore, Debtor again

violated a clear court order thus warranting a finding that he is in civil contempt.

Debtor has not sought in any meaningful way to comply with the orders of this Court.

Debtor apparently believes that he should be treated differently than other debtors. He does not

believe that he should have to pay the requisite filing fees, despite acknowledging available

retirements account valued at $155,000. (Trial Tr., 51, Aug. 18, 2005). Debtor also believes that he should not have to notice interested parties.

Debtor has filed two motions, in violation of previous court orders, seeking to alter or amend judgment. When Debtor was questioned as to why he felt he had the right to file multiple motions without paying the filing fees, he responded that he actually thought he did have that right. (Trial Tr., 33, Aug. 18, 2005). Despite Debtor's belief, his disregard of multiple orders of this Court warrants a finding of civil contempt. Petitioners have undoubtedly met their burden to prove by clear and convincing evidence that Debtor repeatedly violated specific orders of this Court.

## Attorney Fees

The creditors moving for civil contempt sanctions were protecting their interests by opposing a fourth bankruptcy filing by Debtor in violation of the Dismissal Order. Work by their attorneys was appropriate and necessary.

It is within this Court's discretion to determine the degree of punishment for contempt. Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S. Ct. 2133, 115 L. Ed.2d 27 (1991). This discretion permits a civil sanction fine amounting to attorney's fees representing the cost of defending improper litigation. See Chambers, 501 U.S. at 45, 111 S.Ct. at 2133; In re Generes, 69 F.3d 821, 826 (7th Cir. 1995). A standard remedy in cases of civil contempt is restitution in the form of reasonable attorney's fees. Cox v. Zale Delaware, 239 F.3d 910, 916 (7th Cir. 2001); citing United States v. United Mine Workers of America, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L. Ed. 884 (1947).

Civil contempt penalties are warranted and in this case necessary to ensure compliance by Debtor in the future with the Dismissal Order as amended this date.

As a sanction for Debtor's multiple attempts to circumvent the filing fee due in bankruptcy and violate unambiguous court orders, and also to ensure future compliance by him, he will be required to pay sanctions in the form of a portion of attorney fees incurred by each creditor forced to respond to his frivolous and improper motions.

Taking into account the nature of the offenses involved and work performed by movant's respective counsel, and in the exercise of discretion to deny portions of the fees and expenses requested so as to make the total of sanctions proportionate to the Debtor's offenses, sanctions will be allowed by separate orders and judgments limited as follows:

| Dent-A-Med, Inc. | $3,500.00 |
| Anoto AB | $3,500.00 |

## CONCLUSION

For the foregoing reasons, civil contempt sanctions are separately entered, an Amended Judgment Order is separately entered consistent with the foregoing, and the Debtor's Motion to Alter or Amend Judgment is otherwise denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 15th day of December 2005.

- 23 -